The next case on our calendar for argument this morning is number 20 1435 American Family Life Assurance Co. v. Baker. Mr. Joffe? Yes, good morning your honors and at least the court. My name is Dmitry Joffe. I'm the law firm of Joffe Law PC and I represent Appellants in this case. If your honors open the joint appendix on page 831 in the middle of that page you will encounter paragraph 10.7.1 of AFLAC Standard Arbitration Agreement which is called Limitation on Claims and Remedies. And this provision states that the exception of a claim that is based upon misconduct by AFLAC that is willful, malicious, or fraudulent and sales associates shall be limited to a claim for breach of contract and the remedies and liabilities arising thereunder. This provision as written divests the arbitrator of jurisdiction to award any relief on any statutory claim that is not predicated on fraud, malice, or willfulness. If the arbitrator were to award such relief on those claims, a court applying the Federal Arbitration Act could then vacate the arbitration award as issued without the fraudulence of the virus. So this provision on its face constitutes a prospective waiver of AFLAC's sales associates' federal statutory rights including respondents Bakers and Varela, ERISA, FICA, and FUTA claims arising of the alleged misclassification as independent contractors rather than employees. Indeed the Supreme Court in American Express versus Italian Colors, the great great Antonin Scalia stated that an impermissible prospective waiver would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory claims. That rule that prospective waiver is a red line that the arbitration agreement cannot cross was first announced by the Supreme Court in Institution Motors in 1985 and the court has never wavered from that red line in 35 years since then. Can I ask you, I understand and rely on our note of caution, in Ragon to argue that its holding does not control the outcome in this case. But just as the employer, can I continue, but just as the employer in that case, that is Ragon, agreed not to enforce the unconscionable provision in the arbitration agreement there, so has AFLAC agreed not to enforce paragraph 10.71 here. So could you help me understand how this case is different from Ragon? Yes, Your Honor. The first instance in Ragon, there was no arbitration provision that actually precluded the respondent in Ragon from bringing for arbitration claim. There were two provisions in her arbitration agreement that limited her ability to do so. One limited the statute limitations and the other provision had a terming fee splitting provision of variance with the federal statute. So the issue in the case itself was not a provision that actually precludes the claims, which this provision 10.71 on its face does. Any claim such as Arisa or federal claim that my clients bring, that would fall into this bar on claims and remedies, clearly. That was not the case in Ragon. Secondly, in Ragon, the employer never attempted to enforce those provisions and waived them at the exception of the case. Here, Your Honor, in May 2019, two years ago, AFLAC stood in this court and tried to enforce this arbitration agreement with this provision 10.71. And in the district court below, it attempted to do the same and succeeded on the first appeal. Contemporaneously, AFLAC enforced that agreement with this limitation of liability provision against my client's colleagues, the seven sales associates who were compelled to arbitration in the Georgia federal court and then in the 11th Circuit with that provision intact. So there are two, I think, critical distinctions that makes this case, uh, well, that distinguishes this case from the outcome in Ragon, but not from the reasoning in Ragon. The reasoning in Ragon's note of caution and the statement that the court enforces the arbitration agreement with less than robust enthusiasm. And the court also said in Ragon that had the employer attempted to enforce the agreement as written, we may not have in the employer's favor. So I believe this distinction makes a distinction between our own case and this case. Under New York law, could you address, Mr. Jaffe, could you, could you turn to the question about, um, pass the waiver, but if the provision is unconscionable, as you allege under New York law, why wouldn't they simply be severed from the arbitration agreement based on the provision at paragraph 11.3? Isn't that what New York law would recommend? Uh, no, Your Honor, I believe New York law follows the federal law and the New York law accepts the idea that the prospective waiver of federal or state statutory claims could not be tolerated in the arbitration agreement, and it follows, uh, it follows a federal approach, uh, in that regard, and the cited cases are now briefed for deliverance. Either you sever or you agree to have the statutory claims enforced in the context of arbitration. Right. Well, here is the problem with severance. Here, first of all, as the Supreme Court stated in submission mortars and repeated in other cases, if there is a prospective waiver to pursue a statutory right, we will have little hesitation and condemn the agreement as against public policy. This is a very strong and unequivocal statement, and this court quotes that statement in Ravon. You didn't say we would have little hesitation in severing the offending provision. The Supreme Court did not say we'll have little hesitation in upholding the agreement without the offending provision. No, the statement is very clear. You have to have little hesitation in condemning the agreement as against public policy, and, Your Honor, all the circuit cases that dealt with that type of provision, they quote in the Ninth Circuit, sorry, I apologize, Eleventh Circuit, says that when an arbitration clause has provisions that defeat the remedial purpose of the statute, then the arbitration agreement is enforceable, unenforceable in its entirety. The Ninth Circuit in Graham Oil said that a prospective waiver provision like this is a blatant misuse of the arbitration procedure, and if the entire arbitration clause, and not merely the offensive provisions, must be stricken from the contract. The Fourth Circuit more recently put in haste in a dealing case that the just and efficient system of arbitration intended by Congress when it passed the FAA may not play host to this sort of farce. Those are all good authorities, starting with the Supreme Court, that counsels this court and the court below to have little hesitation in condemning the whole agreement as a farce and an integrative scheme to contravene public policy. That's one reason, and it's the most important reason why severance is inappropriate here. The second reason, Your Honor, is contrary to the contract language. The contract terms of severability, which is on paragraph 11.3, and if you turn to page A32 of the appendix, you will see that a provision, and what that provision says, if any one or more of the provisions or phrases shall for any reason be held to be invalid, illegal, or unenforceable, then that provision may be severed. Now, in our case, Your Honor, AFLAC, for example, never conceded that the provision is unconscionable. It actually claims that paragraph 10 is entirely reasonable and in no way seeks to preclude associates from vindicating any statutory rights to which they might claim to be entitled. That's in AFLAC's brief on page 23. The district court never found that provision unconscionable. It didn't resolve that issue. So how could the district court sever a provision where severance would be contrary to the language of the contract? That's not severance. That's just redlining, which is not the proper way to deal with it. Yes? You have a minute remaining in your main argument and then two minutes for rebuttal. Thank you. I wanted to make... Yes, sorry. You could go ahead and make one final point before we hear from your opposition. Yes, thank you. Please. Yes, and the final point why severance is inappropriate is just, in general, when I quote the statement of contract, the fact that the overbroad term is contained in the standard form supplied by the dominant party argues against aiding that party in the request to sever. And we cite cases from Palladino and Dillon, case from Fourth Circuit, that says that court generally opt not to redress an agreement to enforce another promise in the contract where the party with a superior bargaining power extracted that promise, that offensive promise in the first place. So those are the reasons why the severance is improper. And so, Your Honor, you have this agreement with a clearly unconscionable provision, a plainly unconscionable, as you call it, in paragraph 10.71. And how has that agreement survived for many, many years? And it has hundreds of thousands of copies in circulation. This is plainly unconscionable farce, but it survived. And it survived for so long precisely because of those nevermind waivers. So the agreement, the company loads its agreement with unconscionable features. And then at the last moment, and in our case, after a settlement deal, after 20 months of litigation, never mentioning any waivers, now, at the last moment, they waive it. The agreement survives in its evergreen form, and it has survived for many, many years and hundreds of thousands of copies with this unconscionable provision staring in your face. At some point, you won't be able to see it. Your time has expired. You will have two minutes for rebuttal. Thank you very much. Thank you. Ms. Casilli. Ms. Casilli, are you on mute? Forgot to take myself off mute. Pardon me, Your Honor. That happens. May it please the court, on behalf of the appellee, this case was remanded back to the district court for the sole reason that the appellant essentially came up with a new theory of unconscionability for the first time during their initial appeal. That's the challenge they mount today. On remand, the district court was given the opportunity to address it essentially for the first time and correctly issued its second decision ordering that the appellant should individually arbitrate their claim. The district court's decision is based on the judge's finding that the new unconscionability argument was rendered moot by Affleck's waiver and its stipulations that it wouldn't raise the provision, section 10-7-1, that the appellant erroneously contends bars them from bringing statutory claims as a defense to such claims in court or in arbitration. And the district court's ruling in this regard is entirely correct. In fact, it's required by the precedent established by this court, the Ragone case, that my learned opposing counsel is citing to Ragone and by the law of the state of New York, the law that is applied to the question of contractual unconscionability. The Ragone case expressly found under New York law, an arbitration provision may be enforced as modified by a party's waivers. The Ragone court further noted that in New York, a party may make an after-the-fact waiver of terms to modify a contract, and that New York court then assessed the enforceability of an arbitration provision as so modified. This is because... Judge Crudup, I'd like you to explore that further with the concern in mind that, as expressed in the note of caution in Ragone, that a large company with many, many employees slash independent contractors can safely include a mandatory arbitration provision, a mandatory payment of arbitrator's fees provision, clauses that we might, you know, whose enforceability we might question under New York law, and then, if called on it in a lawsuit, simply waive and force the individual into arbitration on other substantive claims that the people without the resources to challenge the enforceability of the provision or without sophistication to know that they might be unenforceable feel bound by them. What's to prevent that is a defendant company, not necessarily AFLAC, but as a not entirely good, safe business method for proceeding with when people don't have an opportunity to, you know, sign their employment contract and don't have counsel or resources to contest provisions like this. Well, in that, again, we would start with the premise, Your Honor, that arbitration under the FAA, we should defer to the greatest extent possible to arbitrability in the case of an arbitration provision. And effectively, because the unconscionability argument is an equitable defense, effectively, it can be cured in order to meet our objective of permitting arbitration where the parties have agreed to arbitrate. It effectively, in the case of a withdrawal of a challenge term on the basis of unconscionability, if that term is withdrawn by the party seeking to enforce arbitration, it puts the party in no disadvantage. That term that they would point to as the unconscionable term has been removed by agreement. And so they are not... But it's only removed once it's been challenged. And to the extent that an individual thinks he's going to have to pay, there's a cost associated with it. Why doesn't that put the individual employee or independent contractor at a great disadvantage? Well, respectfully, Your Honor, in that circumstance, once the party seeking to enforce agrees not to attempt to adhere to that contract term, there's nothing yet to be complained of. The party has been relieved of that which he or she thought was an unconscionable term. But I'm worried about all the people who don't have the wherewithal to challenge it and think they are bound, even though it's been deemed unconscionable by the New York courts. What about... Pardon me. Please go ahead. Respectfully, the New York courts have spoken to that and they have said that the after-the-fact waiver is permissible and cures the alleged unconscionability such that the court doesn't even need to address whether or not it was unconscionable in the first instance. So you're saying we shouldn't worry about those people who don't know that it's unconscionable and believe that they are bound by it? Well, Your Honor, I suppose that they could have seek to bring the same challenge in the arbitration proceeding itself. And in fact, as we all know, that often occurs that the example that Your Honor has provided of a fee-shifting provision, it is not uncommon at all that a party in arbitration will challenge the fee provision of an arbitration provision, the fee term, and that the arbitrator will then entertain that question and make a determination whether or not it should be given effect. So the party in that instance who objects to what he or she believes is an unfair imposition of potential fees would still have the opportunity for that to be resolved in arbitration as it should be. Okay. Thank you. Please proceed. Speaking again to Ragone, there is a clear distinction between the hesitation that my opposing counsel cites to as expressed by the Ragone court in dicta in our circumstance. In fact, the Ragone court itself makes that distinction, noting that its hesitation is premised upon the possibility that a party might seek to enforce a provision barring pursuit of certain federal statutory claims, a situation that the Ragone court distinguished from the one before it, which is identical to our circumstances. It makes clear that the issue of unconscionability doesn't need to be reached if there is no such effort and the challenge provision has been waived. And that's exactly what has happened here. Without conceding that Section 1071 bars pursuit of federal statutory claims because it doesn't, and if like agreed, it would never make such an assertion. Couldn't Ragone be understood as leaving unanswered whether an arbitration agreement containing an unconscionable term is always, always curable by the employer's unilateral waiver of that term or whether the agreement is curable only where that term would be severable under ordinary contract law principles. Following up on Judge Carney's questioning, the second line of reasoning might have some advantages because the former line could incentivize the employer or other high bargaining power parties to insert unconscionable terms into its agreement only to waive them later if challenged. I understand your honor's point. While I believe that Ragone directs us to consider the matter resolved and moot upon waiver, there is also the possibility of continued consideration of the term and ultimately a decision to sever it if there's a conclusion that it's unconscionable. In either event, in this case, the decision of the district court should be affirmed because while I strenuously would argue that the issue was mooted and there is no need to address the unconscionability challenge, if you were to address it, the determination should be made that it is not an unconscionable term. And even were it an unconscionable term, the decision should be made to sever it. I'll speak first to the matter of the unconscionability challenge itself. This court should affirm because the attellants never met their burden of proof for an unconscionability challenge. Under New York law, their threshold obligation is to first appeal that they made no showing of procedural unconscionability and that alone is fatal to their unconscionability challenge in this instance. But they try to salvage that unconscionability argument by saying that there are rare and exceptional circumstances where a party is relieved of the obligation to show procedural unconscionability. We don't think that there are such rare and exceptional circumstances here. And even if we look at the unconscionability substantive argument challenge, it rests entirely upon an incorrect and strange reading of the arbitration provision in 10.71. AFLAC, contrary to what my opposing counsel has said, AFLAC has never interpreted section 10.71 to limit the appellant's or any other associate's right to bring statutory claims. And in particular, in fact, sought to arbitrate the appellant's statutory claims as set forth in their draft complaint. That is because the language of 10.71 has to be read together with all provisions of the agreement as New York law, in fact, as Hornbook contract law requires. The language of 10.71 is interpreted by AFLAC to just mean that to the extent that there are common law tort claims, those should be limited to willful, malicious, and or fraudulent conduct. But you have to read 10.71 together with the entirety of the arbitration provision. And if you look at section 10.1 of the arbitration provision, it expressly contemplates that statutory claims can and must be arbitrated. In fact, it reads that any dispute arising under federal, state, or local laws, statutes, or ordinances will be arbitrated. And in fact, it goes on to- including discrimination and harassment claims. So, contrary to the argument which has been made, the provision at issue does not preclude pursuit of statutory claims. And in fact, the contract read as a whole and harmonizing all its terms to ascertain the party's intention indicates that statutory claims must be arbitrated. As the court has noted, there is a severance provision in the agreement. If there were a finding, which we don't believe is warranted, that 10.71 is unconscionable, then the proper remedy is to sever it from the agreement and enforce the remainder of the arbitration provision. But simply said, there is no egregious scheme to contravene public policy in this case. AFLAC has always and remains committed to arbitrating statutory claims, should there be any such claims asserted by an associate under this agreement, including the appellants in this case. Thank you very much. Mr. Jaffe, you preserve two minutes for rebuttal. Yes, thank you, Your Honor. Well, if the arbitration agreement and this limitation of liability provision is so great, as Ms. Kasselich has described, why would AFLAC decide to waive it? According to AFLAC, the provision is fine. It doesn't preclude associates from pursuing the claim, which on its face it does. It is hard to understand the argument that it does not. You know, the court in Palladino described it in the citation of page 16 of our brief, in, well, page 21. It's very clear that, and I quote, these two provisions are not inconsistent. They should rather be read together, and so read the work hand in glove to make it difficult for the employee to obtain any relief. You know, on the one hand, the agreement forces the employee to go to arbitration, and on the other hand, it denies the associate any relief on the statutory claim. The court says the words are plain, and the intent behind them are apparent. They are designed to limit, in this case, AFLAC's liability in an unconscionable way, because it denies the remedies that the federal statutes provide for the associates. So that's one. The second problem with waiver is that it is transparently opportunistic. You know, they filed a complaint against my clients in December of 17, and been litigating it for until August 2019, when AFLAC in its brief decided to waive that. That's 20 months of heavy litigation, and other associates who would read the agreement would be deterred in the first place from even bringing those claims, because they will read that they cannot pursue them under 10.7.1, and nothing can stop AFLAC from enforcing this particular agreement in the future, and the courts will continue to uphold it. This is a perfect example of this type of waivers, when the employee loads the agreement with highly undesirable, you know, terms, and then says, never mind. Here, after a month and a half... Yes, Mr. Jaffe, your time has expired. Thank you. Thank you very much. Thank you for your decision. The final case on our calendar for argument this morning is number...